UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


Douglas-Alan Pelmear,et al.,                    Case No.  3:18-cv-01480

        Plaintiffs

   v.

                                    MEMORANDUM OPINION
                                    AND ORDER

Maureen O'Connor, et al.,

        Defendants


## INTRODUCTION


*Pro se* Plaintiffs Douglas and Noah Pelmear filed this action under 42 U.S.C. §§ 1983, 1985,

1986, and 1988 against numerous defendants, including fifteen Ohio state-court judges, seven Ohio

county and municipal prosecutors, eight Ohio state-court employees, eight Ohio law enforcement

personnel, two Ohio municipalities, three Ohio county boards of commissioners and nine individual

county commissioners, fifteen Ohio county and municipal government officials, a non-profit agency

and two of its employees, an Ohio prison and a prison employee, three law firms, four private

individuals, and "unknown" individuals and corporations.

In the Complaint, Plaintiffs allege the Defendants violated their constitutional rights and

federal law in connection with a business loan and various civil and criminal lawsuits.  (Doc. 1.)

They request money damages.  (*Id.* at 30.)  They also have filed a motion seeking a preliminary

injunction and temporary restraining order and a motion for sanctions.  (Docs. 4, 5.)  For the

following reasons, I dismiss Plaintiffs' Complaint and deny the motions.

Plaintiffs, Douglas Pelmear ("D. Pelmear") and his son, Noah Pelmear ("N. Pelmear"), claim their "issues" with the various Defendants began in 2009, when they attempted to obtain a bank loan for their companies, Horse Power Sales.Net, Inc. ("HPSN") and HP2g, Inc. LLC ("HP2g"), from a bank in Henry County, Ohio, but were unsuccessful. (Doc. 1 at 5.) The following is an account of facts relevant to Plaintiffs' claims discerned from government and court records, most of which were attached as exhibits to Plaintiffs' Complaint.

### A.  Douglas Pelmear's Business Loan from Henry County, Ohio

Even though, according to Plaintiffs, D. Pelmear failed at securing a bank loan for his businesses, in August 2009, he was able to obtain a $50,000.00 loan for HPSN from Henry County's Revolving Loan Fund  (hereafter, "the RLF Loan") through Defendant Maumee Valley Planning Organization ("MVPO"), a non-profit regional planning agency, and approved by Defendant Henry County Board of Commissioners. (Doc. 1, Exs. 2, 4, 10.) The RLF Loan was secured by a patent. (*Id.*, Exs. 4, 5.)

In March 2013, the Henry County Board of Commissioners obtained a judgment against HPSN for defaulting on the RLF Loan in the Henry County Court of Common Pleas (Case No. 13-CV-0045). (*Id.*, Ex. 16.) On three separate occasions, in 2013, 2014, and 2015, Defendant Michael Bodenbender, Henry County Sherriff, seized D. Pelmear's property on behalf of the Henry County Board of Commissioners and MVPO to satisfy that judgment. (*Id.*, Exs. 7, 8.) In October 2015, HPSN made a "final payment" of more than $50,000 to satisfy the judgment on the RLF Loan. (*Id.*, Ex. 9.)

Meanwhile, in November 2013, D. Pelmear filed two lawsuits in the Defiance County Court of Common Pleas relating to the RLF Loan (hereafter, the "RLF Loan Cases"). (*Id.* at 11-12.) In one case (Case No. 13-CV-42618), he and HPSN sued Henry County, its Board of Commissioners, and MVPO. *See* the public docket information for these cases at http://defianceclerkofcourts.com/eservices. In the other (Case No. 13-CV-42628), he and HP2g sued Henry County, its Board of Commissioners, and MVPO, along with numerous individuals, including Defendants MVPO employees Marsha Kolb and Dennis Miller, Henry County Commissioners Thomas VonDeylen and Glenn Miller, Clerk of Henry County Board of Commissioners Vickie Glick, and Prosecutor Thomas McWatters. *Id.*

Defendant Judge Joseph Schmenk dismissed both suits on summary judgment in November 2016. *Id.* D. Pelmear and his companies appealed the trial court's judgments to Ohio's Third District Court of Appeals, which dismissed the appeals in May 2017. *Id.* In November 2017, D. Pelmear filed in the trial court in both actions a *pro se* "Motion of Reconsideration of Fraud upon the Court," which were dismissed. *Id.* (*See also* Doc. 1, Ex. 12.)

## B. Noah Pelmear's Criminal Proceedings

In May 2016, N. Pelmear was arrested in Fulton County and cited for driving under a suspension for operating a vehicle while intoxicated (Case No. TRD1601588). (*Id.*, Exs. 15, 24.) Less than two months later, he was stopped after a random check of his vehicle's registration, which revealed the license plates on the vehicle were registered to another vehicle, and cited for driving under suspension, a misdemeanor of the first degree (Case No. TRD1602132). (*Id.*, Ex. 24.) Following pretrial proceedings, the two traffic citations were consolidated for purposes of a bench trial (hereafter, "the 2016 Traffic Violations Cases"). (*Id.*) The trial took place in October 2016, after which the court found N. Pelmear guilty of both charges and sentenced him to ninety days in

jail on each charge.  (*Id.*)  The court suspended all but ten days of the jail sentence and placed him on community control for three years.  (*Id.*)

N. Pelmear appealed his convictions and sentence to the Sixth District Court of Appeals (Case Nos. F-16-009, F-16-010).  (*Id.*)  He claimed the trial court violated his federal due process and equal protection rights by:  refusing to dismiss his case for want of jurisdiction because he is entitled to diplomatic immunity as the son of a minister of the Cherokee Nation, denying his motion to compel discovery, depriving him of his right to a jury trial, denying his motion to dismiss for failure to comply with his right to a speedy trial, and refusing to disqualify the prosecutor in his case.  (*Id.*) The appellate court affirmed the trial court's judgment on December 21, 2017.  (*Id.*)

N. Pelmear appealed the state appellate court's judgment to the Supreme Court of Ohio (Case No. 2017-1690).  (*Id.*, Ex. 13.)  On December 4, 2017, he asked the court to stay the appellate court's judgment.  (*Id.*)  On December 22, 2017, the court granted a temporary stay of judgment pending its ruling on the motion for a stay.  (*Id.*)

On that same day, the City of Wauseon filed a motion in the Fulton County Court of Common Pleas to revoke N. Pelmear's community control and impose his original sentence in the 2016 Traffic Violations Proceedings, because he had violated the law on February 8, 2017, by driving under a "twelve-point suspension" in the Village of Archbold, also in Fulton County (Case Nos. TRD1700396A and TRD1700396B) (hereafter, "the 2017 Traffic Violations Cases").  (*Id.*, Ex. 28.)  The court held a hearing on the motion at which it ordered N. Pelmear to begin serving his ten-day jail sentence immediately and vacated his work release because he was unemployed at the time.  *See* http://pa.fultoncountyoh.com/recordSearch.  N. Pelmear began serving his prison sentence at Defendant Correction Center of Northwest Ohio (hereafter, "CCNO") that day.  (Doc. 1, Ex. 35.)  The trial court did not enter the notice of the Supreme Court of Ohio's stay of the

appellate court's judgment on its docket and order CCNO to release N. Pelmear until Monday, December 26, 2017.  *See* http://pa.fultoncountyoh.com/recordSearch.

Ohio's highest court declined jurisdiction over D. Pelmear's appeal in the 2016 Traffic Violations Cases on January 31, 2018. *See* http://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2017/1690.  The Fulton County Court of Common Pleas dismissed the 2016 Traffic Violations Cases as part of a plea agreement on July 3, 2018.  *See* http://pa.fultoncountyoh.com/recordSearch.  That same day, N. Pelmear entered a plea of guilty in the February 2017 Traffic Violations Cases and the court imposed a fine.  *See id.*

In addition, in April 2018, the Fulton County Dog Warden Brian Banister charged N. Pelmear with failing to have a dog properly licensed (Case No. CRB1800151) (hereafter, "2018 Dog License Case").  (*Id.*, Exs. 42, 43.)  That case remains pending.  *See* http://pa.fultoncountyoh.com/recordSearch.

**PLAINTIFFS' CLAIMS FOR RELIEF**

Plaintiffs assert twelve claims for relief.  Although the Complaint is often difficult to parse, as best I can discern, Plaintiffs allege:

1.  D. Pelmear was "deprived [of his] [c]onstitutional and/or [s]tatutory-rights [*sic*]" when Defendant Thomas VonDeylen, a Henry County Commissioner, "talked with" the president of a bank in Henry County, Ohio, in August 2009 to prevent D. Pelmear from obtaining a loan from the bank, and "made" Defendant Vickie Glick, the Henry County Board of Commissioners' Clerk, change his vote on the RLF Loan from absent to a no on the Board's resolution approving the loan.  (Doc. 1 at 6-7.)

2.  Defendant Marsha Kolb, MVPO's loan administrator, "knowingly" placed a "wrongful UCC lien" on HP2g in May 2010 to secure a patent that belonged to D. Pelmear as collateral for the RLF Loan, and Defendants Henry County Board of Commissioners and MVPO retained the lien for more than five years, violating Plaintiffs' due process rights and engaging in "organized public corruption."  (*Id.* at 7-8.)

3.  Defendants Henry County Board of Commissioners, MVPO executive director Dennis Miller, and Thomas McWatters III, the City of Wauseon's "Attorney/Prosecutor" violated Plaintiffs' due process rights and constitutional guarantees against double jeopardy and discrimination, and engaged in "organized public corruption" when they

conspired to seize his property, held the property "pass [*sic*] the statute of limitation[s]" and returned it damaged in June 2013; and seized their property again in September 2014, again damaging it. (*Id.* at 9-10.)

4. Defendant McWatters "devised [a] plot along with the others involved" to wrongfully seize their property in August 2015 and forced an "over payment" of the RLF Loan in October 2015, demonstrating discrimination and "organized public corruption." (*Id.* at 10-11.)

5. Defendant Judge Joseph Schmenk of the Henry County Court of Common Pleas and "the court clerks and staff" violated his due process rights in connection with the RLF Loan Cases by:

   a. Dismissing the RLF Loan Cases in November 2016 without a hearing;

   b. Relying on "counterfeit fraudulent documents" in his decision; and

   c. Allowing McWatters to represent MVPO when he also was a defendant in the suit. (*Id.* at 11-13.)

6. The conduct of the Defendant judges, law enforcement officers, prosecutors, court clerks, law firms, and attorneys in connection with the 2016 Traffic Violations Cases violated N. Pelmear's due process and equal protection rights, and constituted "organized public corruption," conflict of interest, and bias or apparent bias through the following actions:

   a. Defendant Wauseon City Police Officer Marc Tanner and Defendant Deputy Matthew Smithmyer arrested him without informing him of his *Miranda* rights, and kidnapped and jailed him while the appellate court's judgment was stayed by the Supreme Court of Ohio;

   b. Defendant Fulton County Court of Common Pleas Judge Jeffrey Robinson entered a not guilty plea for him;

   c. Defendant Fulton County Court of Common Pleas Judge Kent North did not prove jurisdiction at his arraignment;

   d. Defendants Prosecutors Eric Nagel and McWatters had a conflict of interest due to involvement with the RLF Loan Cases;

   e. Defendant Prosecutor Nagel failed to disclose evidence that was used at trial and sentencing;

   f. The trial court denied his discovery requests;

   g. The trial court denied his jury demand;

   h. The trial court denied his motion for a speedy trial;

   i. Defendant Prosecutor McWatters had a conflict of interest due to the RLF Loan Cases and "strategized a plot and carried out his 'pay back against [him]'" (emphasis omitted);

     j.   Defendants Wauseon City Assistant Prosecutors Stephen Maloney and Kevin Whitlock had a conflict of interest relating to the Supreme Court of Ohio stay;

     k.   Defendant Judge North violated the Supreme Court of Ohio stay by ordering his imprisonment;

     l.   Defendant Justices of the Supreme Court of Ohio failed to rule on his "Motion-Of-Contempt-And-Affidavit" (emphasis omitted);

     m.  Defendants Sixth District Court of Appeals Judges Arlene Singer, James Jensen, and Christine Mayle did not conduct a hearing on his "Fraud upon the Court" motion;

     n.   Defendant Fulton County Prosecutor Scott Haselman submitted counterfeit evidence as exhibits to a pleading filed in the Supreme Court of Ohio;

     o.   The trial court did not properly docket information regarding service of the summons for him to appear in court for a hearing on the State's motion to revoke community control; and

     p.   Defendant Wauseon City Police Officers Tanner and Tony Imber committed perjury at his trial.  (*Id.* at 14-20.)

7.   In moving to revoke his community control and impose his original sentence in the 2016 Traffic Violations Cases, Defendants Wauseon City Assistant Prosecutors Maloney and Whitlock violated his double jeopardy rights; and Defendant Prosecutor Nagel had a conflict of interest due to involvement with the RLF Loan litigation.  (*Id.* at 21.)

8.   Defendants Judge North, Wauseon City Assistant Prosecutors Maloney and Whitlock, Bailiff Mike Mann, Deputy Sheriffs Smithmyer and Jamie Simon, and "the sheriff dog" conspired to impose a harsher sentence after revoking his community control than the original sentence in the 2016 Traffic Violations Cases by providing no work release and to intimidate him, violating his equal protection rights and constitutional guarantee against double jeopardy and engaging in "organized public corruption."  (*Id.* at 21-22.)

9.   The Defendant Justices of the Supreme Court of Ohio were "in collusion" with Defendant Attorney Marc Fishel, who had a position on the high court's advisory board, to rule against him without a hearing, violating the court's ethics rules and engaging in "organized public corruption."  (*Id.* at 22-23.)

10. Regarding N. Pelmear's 2017 Traffic Violations Case:

     a.   Defendant Archbold Police Officer Nathan Slough did not have jurisdiction over him because he had a "Cherokee nation of Indians travel permit";

     b.   Three unnamed Archbold police officers used intimidation and threat of force in violation of his equal protection rights to force D. Pelmear to drive to their jurisdiction and either tell them the vehicle N. Pelmear was driving was stolen, in which case N. Pelmear would be charged with grand theft, or was his, in which case he would be charged with allowing N. Pelmear to drive without a valid license;

<ol type="a" start="3">
<li>Defendant Prosecutor Mark Hagans failed to disclose exculpatory evidence in discovery; and</li>
<li>Defendant Judge Eric Nagel had a conflict of interest and engaged in "organized public corruption." (*Id.* at 23-24.)</li>
</ol>

11. Regarding N. Pelmear's 2018 Dog License Case, the following conduct constituted discrimination and "organized public corruption":

<ol type="a">
<li>Defendants Fulton County Sherriff Roy Miller and Fulton County Deputy John Trejo intimidated D. Pelmear by warning him not to drive in Fulton County;</li>
<li>Defendants Fulton County Dog Warden Brian Banister and Deputy Dog Warden Jon Rufenacht attempted to intimidate N. Pelmear "with the threat of force" into purchasing a dog license when he did not own a dog and to entrap him;</li>
<li>Defendants Banister and Rufenacht issued N. Pelmear a ticket for failing to properly license a dog and he does not own a dog;</li>
<li>Defendants Banister and Rufenacht committed perjury "with intent to mislead and defraud the court" at a pretrial;</li>
<li>Defendant Judge Nagel attempted to "hide" records by denying N. Pelmear's public records request; and</li>
<li>Defendant Wauseon City Assistant Prosecutor Whitlock participated in a pretrial but was not a party, demonstrating a conflict of interest and entrapment and resulting in a delay in the proceedings of his 2016 Traffic Violations Cases. (*Id.* at 24-27.)</li>
</ol>

12. The Defendant Clerks of Court conspired to deprive Plaintiffs of their due process rights and engaged in "organized public corruption" by:

<ol type="a">
<li>In May 2014, Defendant Henry County Clerk of Court Connie Schnitkey made copies of documents for a lawyer in a 2013 HPSN lawsuit that were "not filed or documented";</li>
<li>In February 2018, Fulton County clerks refused to come to the intake window for Plaintiffs;</li>
<li>In 2016, Defendant Fulton County Clerk of Court Heather Lumbrezer certified a false docket entry in the 2016 Traffic Violations Cases;</li>
<li>In July 2016, no clerks were present in court during a hearing; and</li>
<li>Defendant Lumbrezer conspired with Defendant Michelle Schlade, a court reporter, in 2018 to charge D. Pelmear for two copies but gave him only one copy. (*Id.* at 27-28.)</li>
</ol>

### A. *Pro Se* Pleadings

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), I am required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, I must construe the pleading in the light most favorable to the Plaintiffs. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

### B. Federal Civil Rights Statutes

Plaintiffs bring this action under the federal civil rights statutes 42 U.S.C. §§ 1983, 1985, 1986, and 1988. (Doc. 1 at 3.)

To establish a violation under § 1983, a plaintiff must show that a person acting under color of state law deprived him or her of rights, privileges, or immunities secured by the Constitution or laws of the United States. *E.g., Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

To obtain relief under § 1985, a plaintiff must allege that the defendants conspired together for the purpose of depriving the plaintiff of the equal protection of the laws and committed an act in furtherance of the conspiracy, which was motivated by racial or other class-based invidiously discriminatory animus. *E.g., Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). Section 1986 imposes liability on anyone who has knowledge of a conspiracy under § 1985, and the power to prevent the commission of that conspiracy, yet neglects or refuses to do so. *E.g., Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005).

Section 1988 authorizes district courts to award reasonable attorney fees to prevailing parties in civil rights litigation. *E.g., Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

## ANALYSIS

### A. Defendants Subject to Dismissal

#### 1. Defendants untied to any allegations

A plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities that form the basis of the alleged unconstitutional behavior. *See, e.g., Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995).

Plaintiffs name the following Defendants in their Complaint, but assert no specific allegations connecting them to any of their claims for relief: Tracy Zuver, Gwen Howe-Gebers, Whitney Lavinder, Alyese Stidham, Randi Wudi, Reminger Co. LPA, Michael Gilbride, Donna Keefe, Fishel Hass Albrecht Downey LLP, Matthew Davis, the City of Wauseon, Jeff Stiriz, Shane

Chamberlin, Scott Stiriz, Harold Stickley, Steve Schneider, Mayor Kathy Huner, the Village of

Archbold, Kevin Morton, Vaughn Bentz, Kenny Cowell, Kevin Eicher, Brian Huffman, Ed

Leininger, Fulton County Board of Commissioners, Jon Rupp, Bill Rufenacht, Jeff Rupp, Bob

Hastedt, Glenn Miller, Defiance County Board of Commissioners, Ryan Mack, Mick Pocratsky,

Gary Plotts, Jane and/or John Does, and XYZ Corporations. These Defendants are dismissed.

### 2. Private individuals or entities

Generally, to be considered to have acted "under color of state law" for purposes of § 1983,

a person must be a state or local government official or employee. A private party may be found to

have acted under color of state law only when the party "acted together with or . . . obtained

significant aid from state officials" and did so to such a degree that its actions may properly be

characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). An individual

also may be considered a state actor if he or she exercises powers traditionally reserved to a state.

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). Specifically, a privately retained attorney

hired for the purpose of bringing a suit for monetary damages is not considered a state actor under

§ 1983. *Washington v. Brewer*, No. 91-1935, 1991 WL 243591 (6th Cir. Nov. 21, 1991); *see also Polk

County v. Dodson*, 454 U.S. 312, 321 (1981).

Here, Plaintiffs name as Defendants a private law firm and private attorney. Although it is

unclear, they appear to argue that the law firm Barber, Kaper, Stamm, McWatters & Whitlock,

which they claim is the law firm of Defendants Prosecutor McWatters and Assistant Prosecutor

Whitlock, participated in Assistant Prosecutor Whitlock's alleged entrapment of N. Pelmear relating

to the 2018 Dog License Case. (*See* Doc. 1 at 26.) But Plaintiffs offer no factual basis whatsoever

for this claim. Plaintiffs also name Attorney Marc Fishel as a Defendant. They allege that Attorney

Fishel had a conflict of interest in appearing before the Supreme Court of Ohio in the 2016 Traffic

Violations Cases because he represented an alleged contemnor in that suit and was also a member of

an advisory board for the court, and he "influenced" the court's decision in the cases.  (*Id.* at 22-23.)

Again, Plaintiffs provide no supporting facts for this claim.

To the extent Plaintiffs assert that Barber, Kaper, Stamm, McWatters & Whitlock and

Attorney Fishel violated their rights under § 1983, the allegations are unsupported, overly vague and

conclusory, and do not reasonably suggest that the Defendants acted "under color of state law."

Accordingly, those Defendants, too, are dismissed.

### 3.  Defendants who are immune from liability

#### a.  Judges

Judicial officers generally are absolutely immune from civil suits for money damages.  *E.g.,*

*Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997).  They are

accorded this broad protection to ensure that the independent and impartial exercise of their

judgment in a case is not impaired by the exposure to damages by dissatisfied litigants.  *Barnes*, 105

F.3d at 1115.  For this reason, absolute immunity is overcome only in two situations:  (1) when the

conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) when the

conduct alleged, although judicial in nature, is taken in complete absence of all subject matter

jurisdiction of the court over which he or she presides.  *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at

1116.  A judge will be not deprived of immunity even if the action at issue was performed in error,

done maliciously, or was in excess of his or her authority.  *Stump v. Sparkman*, 435 U.S. 349, 356

(1978).

Plaintiffs name as Defendants the following judges:  from the Supreme Court of Ohio, Chief

Justice Maureen O'Connor and Justices Terrence O'Donnell, Sharon L. Kennedy, Judith L. French,

Patrick F. Fischer, R. Patrick DeWine, and Mary DeGenaro; and state-court judges Arlene Singer,

James D. Jenson, Christine E. Mayle, Joseph N. Schmenk, Kent Lewis North, Jeffrey L. Robinson,

Eric K. Nagel, and Mark Powers. Plaintiffs' allegations against these judges do not overcome their absolute immunity, and they also are dismissed.

Moreover, in their fifth claim for relief, Plaintiffs' allegations are directed only at Judge Schmenk, and their ninth claim for relief targets Supreme Court justices (and Attorney Fishel, who, as explained above, is not subject to federal civil rights laws). Those claims, therefore, fail because they are based on allegations against Defendants who are immune from liability.

### b. Prosecutors

Prosecutors are entitled to absolute immunity from damages for initiating a prosecution and presenting the state's case. *E.g.*, *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Pusey v. Youngstown*, 11 F.3d 652, 658 (6th Cir. 1993). A prosecutor must exercise his or her best professional judgment both in deciding which suits to bring and in prosecuting them in court. *Imbler*, 424 U.S. at 424. This duty could not properly be performed if the prosecutor is constrained in making every decision by the potential consequences of personal liability in a suit for damages. *Id.* at 424-25. These suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the state's advocate. *Id.* at 425. Moreover, this immunity reaches beyond the criminal process to conduct in civil proceedings where a government attorney is operating in an enforcement role in "initiating . . . judicial proceedings," *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir. 2000), or "undertak[ing] the defense of a civil suit," *Al-Bari v. Winn*, No. 89-5150, 1990 WL 94229, at *1 (6th Cir. July 9, 1990).

Here, Plaintiffs name as Defendants the following state prosecutors: Thomas McWatters, Stephen Maloney, Kevin Whitlock, Mark Hagans, Scott Haselman, and John Hanna. The challenged actions of these Defendants were all intimately associated with the judicial phase of Plaintiffs' various civil and criminal proceedings. The Complaint contains no facts that indicate that these

Defendants participated in any other kind of activity. They are therefore entitled to absolute immunity, and are also dismissed.

Furthermore, Plaintiffs' Claims Four and Seven fail because they assert allegations only against prosecutors who are immune from liability.

### c. Court clerks and employees

Absolute judicial immunity has been extended to non-judicial officers who perform "quasi-judicial" duties. *E.g.*, *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.* The fact that an error is made is immaterial. *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988). Court clerks and other court officials and employees, therefore, have been accorded absolute immunity from civil rights actions on claims arising from conduct intrinsically associated with a judicial proceeding. *See, e.g., id.* (court clerk); *Denman v. Leedy*, 479 F.2d 1097, 1098 (6th Cir. 1973) (municipal court clerk); *Bush*, 38 F.3d at 847 (court administrator and referee) (citing *Patterson v. Von Riesen*, 999 F.2d 1235, 1240-41 (8th Cir. 1993) (warden); *Coverdell v. Department of Social and Health Servs.*, 834 F.2d 758 (9th Cir. 1987) (social worker); *Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir. 1986) (sheriff); *Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir. 1997) (bailiff)).

Plaintiffs name as Defendants in this case the following court clerks and staff: Tracy Zuver, Connie Schnitkey, Heather Lumbrezer, Whitney Lavinder, Mike Mann, Alyese Stidham, Randi Wudi, and Michelle Schlade. The acts of these Defendants about which plaintiff complains – making copies from court files, docketing pleadings, accepting court filings, attending court proceedings, and preparing court transcripts – are all integral parts of the judicial process. Accordingly, these Defendants are entitled to absolute immunity, and are dismissed.

**B.** Furthermore, for that reason, Plaintiffs' Claim Twelve fails as it asserts allegations only against Schnitkey, Lumbrezer, and Schlade, all of whom are immune from this suit.

**Claims Barred by the Statute of Limitations**

There is a two-year statute of limitations on claims raised under § 1983 and § 1985, and a one-year statute of limitations for claims brought under § 1986. *See Wilson v. Garcia*, 471 U.S. 261, 275–76 (1985) (holding that federal courts must apply the state statute of limitations for personal injury actions to § 1983 claims); *Browning v. Pendleton*, 869 F.2d 989, 991 (6th Cir. 1989) (Ohio's two-year statute of limitations for personal injury claims applies to § 1983 actions); *Swartz v. Eastman*, 194 F.3d 1314, 1999 WL 801570, at *1 (6th Cir. 1999) (Ohio's two-year statute of limitations for personal injury actions applies to both § 1983 and § 1985 claims); *Harris v. City of Canton*, 725 F.2d 371, 375 n.4 (6th Cir. 1984) (noting that Congress specifically prescribed a one-year statute of limitations to § 1986 claims).

Plaintiffs' first through fourth claims for relief relate to the RLF Loan. They are based on events and conduct that occurred between August 2009, when D. Pelmear obtained the loan, and October 2015, when he made a final payment on the loan. (*See* Doc. 1 at 6-11.) And Plaintiffs' twelfth claim for relief, sub-claim (a), asserts allegations against a state-court clerk relating to her performance of court duties in 2014. (*See id.* at 27.) Plaintiffs filed this case on June 29, 2018, well after the statute of limitations expired on those claims, and they are time-barred. *See Fraley v. Ohio Gallia Cnty.*, No. 97-3564, 1998 WL 789385, at *1 (6th Cir. Oct. 30, 1998) (affirming *sua sponte* dismissal of *pro se* § 1983 action filed after two-year statute of limitations for bringing such an action had expired).

**C. Claims Barred due to Plaintiffs' Prior and Pending State-Court Actions**

**1.** ***Res Judicata***

The common law rules of *res judicata* and collateral estoppel preclude a plaintiff from filing a federal civil rights action to relitigate matters that already have been decided in state-court proceedings. *Allen v. McCurry*, 449 U.S. 90, 96-97 (1980). Under *res judicata*, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action. *Id.* at 94. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Id.* "[R]es judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Id.*

Moreover, giving preclusive effect to state-court judgments in federal civil rights cases "promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Id.* at 96. Indeed, federal courts are required by statute to give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state. 28 U.S.C. § 1738; *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007). In Ohio, the doctrine of *res judicata* encompasses both the *res judicata* and collateral estoppel rules described above. *See, e.g., State ex rel. Davis v. Pub. Emp. Ret. Bd.*, 120 Ohio St. 3d. 386, 392 (2008); *Grava v. Parkman Twp.*, 73 Ohio St. 3d 379, 382 (1995). The rule provides that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

Here, to the extent Plaintiffs seek to relitigate claims relating to the RLF Loan and the RLF Loan Cases in Claims One through Five, those claims are barred by the doctrine of *res judicata*, because they were raised or could have been raised in the RLF Loan Cases in the Henry County Court of Common Pleas and Third District Court of Appeals, which rendered final judgments on the merits in those cases. Similarly, N. Pelmear vigorously challenged the charges underlying the

judgment of the Fulton County Court of Common Pleas in the 2016 Traffic Violations Cases, and appealed that judgment to the Supreme Court of Ohio. To the extent he seeks to relitigate claims concerning those proceedings, or the 2017 Traffic Violations Cases, in Claims Six and Seven, those claims also are precluded by the *res judicata* rule, as they were raised or could have been raised in those proceedings, which resulted in final judgments.[1]

## 2. *Rooker-Feldman* Doctrine

Under 28 U.S.C. § 1257, final judgments of state courts are entitled to receive full faith and credit from federal courts, and lower federal courts lack jurisdiction to review state-court decisions since only the Supreme Court has jurisdiction to review such claims. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). Based on this premise, the *Rooker-Feldman* doctrine precludes federal district courts from asserting jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). In other words, a party who has lost a case in state court is barred from seeking what in substance would be appellate review of the state-court judgment in that case in federal court based on the party's claim that the state-court judgment itself violates his or her federal rights. *Berry v. Schmitt*, 688 F.3d 290, 298-99 (6th Cir. 2012).

---

[1] The doctrine of *res judicata* is an affirmative defense, which generally must be raised by defendants in responsive pleadings. Fed. R. Civ. P. 8(c)(1); Ohio R. Civ. P. 8 (C); *see also Haskell v. Wash. Twp*, 864 F.2d 1266, 1273 (6th Cir. 1988). The United States Supreme Court and Sixth Circuit Court of Appeals, however, have indicated that a court may take the initiative to assert the *res judicata* defense *sua sponte* in "special circumstances." *Arizona v. California*, 530 U.S. 392, 412 (2000); *Hutcherson v. Lauderdale Cnty.*, 326 F.3d 747, 757 (6th Cir. 2003); *Holloway Constr. Co. v. United States Dep't of Labor*, 891 F.2d 1211, 1212 (6th Cir. 1989) ("a district court may invoke the doctrine of res judicata in the interests of, inter alia, the promotion of judicial economy."). This case fits precisely within those circumstances, as Plaintiffs already have thoroughly and repetitively litigated these matters in state courts.

To the extent that Plaintiffs seek to challenge the state-court judgments rendered in the RLF Loan Cases or the 2016 and 2017 Traffic Violations Cases in Claims One through Ten and Twelve, or both, and are asking to be relieved of the consequences of those judgments, I lack subject matter jurisdiction over those claims and they are barred under the *Rooker-Feldman* doctrine.

### 3. *Younger* Doctrine

Federal courts also must decline to interfere with pending state-court proceedings involving important state interests unless extraordinary circumstances are present. *Younger v. Harris*, 401 U.S. 37, 44-45 (1971). When a person is the target of an ongoing state-court action involving important state matters, therefore, he or she cannot interfere with the pending state-court proceeding by maintaining a parallel federal action involving claims that could have been raised in the state case. *Watts v. Burkhart*, 854 F.2d 839, 844-48 (6th Cir. 1988). If the state defendant files such a case, *Younger* abstention requires the federal court to defer to the state-court proceeding. *Id.*; *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). Based on these principles, abstention is appropriate if the state-court proceedings: (1) are on-going; (2) implicate important state interests; and (3) afford an adequate opportunity to raise federal questions. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). Abstention is mandated whether the state-court proceeding is criminal, quasi-criminal, or civil in nature as long as federal court intervention "unduly interferes with the legitimate activities of the state." *Younger*, 401 U.S. at 44.

Plaintiffs' Claim Eleven is based on the underlying charges against, and due process afforded to, N. Pelmear in the 2018 Dog License Case. (Doc. 1 at 24-27.) That case is still pending in the Fulton County Court of Common Pleas, however, and Plaintiffs have made no showing that the claims asserted in Claim Eleven are barred in that action. The requirements of *Younger* are satisfied, therefore, and I must abstain from interfering in any pending state-court criminal action against Plaintiff N. Pelmear. Claim Eleven is dismissed on that ground.

**D. Allegations Failing to State a Claim**

Finally, even construing Plaintiffs' Complaint liberally, it fails to adequately allege violations of 42 U.S.C. §§ 1983, 1985, and 1986, and therefore must be dismissed pursuant to § 1915(e)(2)(B). *See Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (a court is not required to accept summary allegations or unwarranted conclusions in determining whether a complaint states a claims for relief).

**1. No Actionable Violation under § 1983**

First, in their first and ninth claims for relief, Plaintiffs fail to allege any violation of rights guaranteed by the United States Constitution or federal statute as required to obtain relief under § 1983. *See* 28 U.S.C. § 1983.

In Claim One, Plaintiffs argue that Defendant Henry County Commissioner VonDeylen deprived him of his "Constitutional and/or Statutory-Rights" by "talking with" a banker about a bank loan that he did not obtain, and by "making" the Henry County Board of Commissioner's clerk, Defendant Glick, change his vote on the RLF Loan from absent to no on the Board's resolution approving the loan. (Doc. 1 at 6-7.) This claim is entirely conclusory and states no plausible ground upon which to assert a § 1983 claim, and is dismissed.

In Claim Nine, Plaintiffs allege that the Supreme Court of Ohio and Defendant Attorney Fishel "colluded" to violate the court's ethics rules. (*Id.* at 22-23.) To the extent Plaintiffs are asserting a § 1983 claim based upon the violation of state-court rules, it does not allege a violation of the Constitution or a federal statute, and also must be dismissed.

**2. Due Process**

In Claims Two, Three, Five, Six, and Twelve, Plaintiffs argue that their due process rights were violated. (*Id.* at 8, 9, 12, 13, 15, 16, 17, 18, and 27.) In order to state a claim for violation of procedural due process under § 1983, a plaintiff must show that he was deprived of a liberty or property interest and that the procedures afforded to protect that interest were insufficient. *Silvernail v. Cty. of Kent*, 385 F.3d 601, 604 (6th Cir. 2004). But not every such deprivation is significant enough to trigger the protections of the Due Process Clause. *E.g., Goss v. Lopez*, 419 U.S. 565, 576 (1975).

Plaintiffs generally do not specify exactly what conduct of the Defendants they believe violated their due process rights. But even liberally construing the factual allegations made for each of these claims, Plaintiffs have not presented a plausible due process violation. The allegations include: in Claim Two, that a lien was wrongfully placed on the HP2g patent; in Claim Three, that property was wrongfully seized in collecting on the RLF Loan; in Claims Five and Six, that the judges issued improper rulings, and prosecutors had conflicts of interest and improperly withheld evidence in the 2016 Traffic Violations Cases; and in Claim Twelve, that the court clerks improperly copied and charged for court records, failed to appear at an intake window and hearing, and made false docket entries. In each instance, the allegations are either too vague or conclusory, the conduct does not rise to the level of a due process violation, the Defendant responsible is immune from liability, or on the face of the Complaint, the procedure challenged was sufficient. Accordingly, to the extent Claims Two, Three, Five, Six, and Twelve seek relief under § 1983 based on due process violations, they also must be dismissed.

### 3. Double Jeopardy

Plaintiffs argue in their third, seventh, and eighth claims for relief that they are entitled to relief under § 1983 based on violations of their rights under the Double Jeopardy Clause of the Fifth Amendment. Claim Three relates to Henry County's seizure of D. Pelmear's property for defaulting

on the RLF Loan.  (Doc. 1 at 9-10.)  And Claims Seven and Eight concerns the revocation of N. Pelmear's community control sentence.  (*Id.* at 21-22.)

The Double Jeopardy Clause protects against both a second prosecution for the same offense after conviction, and against multiple punishments for the same offense.  *E.g., Brown v. Ohio*, 432 U.S. 161, 165 (1977).  Plaintiffs have alleged neither here.  The seizure of D. Pelmear's property was not a punishment imposed by a court.  And the revocation of N. Pelmear's community control sentence and reinstatement of his original sentence were "not attributable to [a] new state criminal offense, but rather [were] attributable to the original conviction."  *United States v. Flanory*, 45 Fed. Appx. 456, 462 (6th Cir. 2002).  Therefore, to the extent Plaintiffs' Claims Three, Seven, and Eight seek redress under § 1983 for double jeopardy violations, they are dismissed.

### 4.  Equal Protection

Plaintiffs also argue in Claims Three, Four, Six, Eight, Ten, and Eleven that they have been discriminated against.  (Doc. 1 at 10, 11, 14, 16, 18, 21, 24, 27.)  The Equal Protection Clause prohibits discrimination by government actors that either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.  *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).  The threshold element of an equal protection claim is disparate treatment.  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  When disparate treatment is shown, the equal protection analysis is determined by the classification used by government decision-makers.  *Id.*

In this case, Plaintiffs do not specify the basis upon which they claim they are being discriminated against.  They do note twice in the body of their Complaint, however, that they belong to the "Cherokee nations of Indians." (Doc. 1 at 11, 24.)  Native Americans are a well-recognized protected class.  *See, e.g., Romanelli v. Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.,* 154 F.3d

1117, 1119 n.4 (9th Cir. 1998).  Nevertheless, Plaintiffs also have not alleged any facts to show that any Defendant provided more favorable treatment to others similarly situated than to them, either in the context of the RLF Loan claims or the claims relating to N. Pelmear's criminal proceedings. Accordingly, to the extent Claims Three, Four, Six, Eight, Ten, and Eleven seek relief under § 1983 for equal protection violations, they are dismissed.

### 5.  § 1985 Conspiracy

In their first, third, fourth, sixth, eighth, ninth, and twelfth claims for relief, Plaintiffs allege that certain Defendants "colluded," "conspired," or "plotted" with one another or others to violate their rights in some manner, never stating so but apparently seeking relief under § 1985 and § 1986. (See Doc. 1 at 9, 20, 21, 22, 23, 27.)  As noted above, however, § 1985 requires that a plaintiff demonstrate a *class-based* conspiracy.  *See Griffin v. Breckenridge*, 403 U.S. 88, 101-03 (1971).  Plaintiffs have made no such showing.  And because Plaintiffs' complaint is devoid of allegations of conspiracy and therefore presents no claim for relief under § 1985, it also fails to present a claim under § 1986.  To the extent Plaintiffs' first, third, fourth, sixth, eighth, ninth, and twelfth claims for relief assert claims under § 1985 and § 1986, therefore, they are dismissed.

### 6.  RICO

In Claims Two, Three, Four, Six, Eight, Nine, Ten, Eleven, and Twelve, Plaintiffs argue that many of the Defendants engaged in "organized public corruption."  (Doc. 1 at 8, 10, 11, 14, 18, 20, 22, 23, 24, 27.)  Liberally construed, Plaintiffs may be asserting a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964.  RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  In turn, § 1962 states in relevant part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

To state a RICO claim, therefore, a plaintiff must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Ouwinga v. Benistar 419 Plan Svcs., Inc.,* 694 F.3d 783, 791 (6th Cir. 2012) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)). A "pattern of racketeering activity" requires at least two predicate acts of racketeering activity occurring within a ten-year period. 18 U.S.C. § 1961(5). The alleged predicate acts may consist of offenses that are "indictable" under any of a number of federal statutes. 18 U.S.C. § 1961(1).

Here, none of the actions of which Plaintiffs complain in Claims Two, Three, Four, Six, Eight, Nine, Ten, Eleven, and Twelve – including interfering with a business loan, seizing property in collecting on a loan, presiding over or prosecuting a criminal proceeding, and performing court administrative tasks – constitute "racketeering activity" as defined by the statutes governing RICO claims. Plaintiffs have not stated a viable RICO violation, therefore, and to the extent their claims are based on that ground, they are dismissed.

## CONCLUSION

Having considered and examined the *pro se* Plaintiffs' Complaint to determine its legal viability, I conclude it must be dismissed because it names improper parties and the claims are either time-barred, precluded by prior or pending state-court litigation, or fail to state a claim upon which relief may be granted, or some combination thereof. Therefore, Plaintiffs' Motions to Proceed *In Forma Pauperis* (Docs. 2, 3) are granted, and their Complaint (Doc. 1) is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). I further dismiss Plaintiffs' Motion for Emergency Preliminary Injunction and Motion for Temporary Restraining Order (Doc. 4) and Motion for Sanctions (Doc. 5).

Further, the following motions are dismissed as moot:

1.  Motion for sanctions filed by plaintiff's (Doc. 7).

2.  Motion for extensions of time to answer filed by defendants (Docs. 8, 9, 10, 11, 15, 16, and 17).

3.  Motion for summary judgment and default judgment filed by plaintiffs (Docs. 13 and 14).

4.  Motion to dismiss by defendants Jenson, Mayle, and Singer (Doc. 22).

5.  Mot for sanctions and for an order filed by plaintiffs (Doc. 25 and 26).

I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.  This case is closed.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge